IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>PATRICIA CARDWELL,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br><br>Case No. 2:07-CR-309 TS |

    This matter is before the Court on Defendant's Motion to Suppress.[1]  Defendant filed her Motion on September 13, 2007.  The Court held an evidentiary hearing on the Motion on November 1, 2007.[2]  Defendant submitted her Memorandum in Support of the Motion on November 27, 2007.[3]  The government filed its response on December 12, 2007.[4]  This matter is now ready for decision by the Court.  For the reasons discussed below, the Court will deny Defendant's Motion to Suppress.

---

    [1]Docket No. 18.

    [2]Docket No. 25.

    [3]Docket No. 26.

    [4]Docket No. 27.

I.  FACTUAL BACKGROUND

On January 10, 2007, West Valley City Police Officer Detective Jason Vincent, was patrolling the area around 4700 South and 4800 West in West Valley City, Utah.  While patrolling this area, Detective Vincent passed a vehicle which had only one functioning headlight, so he stopped the vehicle.

When he approached the vehicle, the officer saw that Defendant was driving the vehicle. The officer requested Defendant's license, registration, and insurance information.  In speaking to Defendant, Detective Vincent testified that she appeared nervous.  Detective Vincent also observed that the passenger was not wearing his lap restraint and requested information from the passenger as well.

Detective Vincent then returned to his patrol car and began writing out a citation to Defendant.  Detective Vincent also ran a warrants check for both Defendant and the passenger. The officer discovered that the passenger had four warrants out for his arrest for minor offenses. The officer did not intend to detain the passenger based on these warrants.  At this point, Detective Vincent called for back up and finished writing a warning citation.

Detective Scott Arnold arrived as back up and Detective Vincent made contact with the vehicle again.  At this point, the testimony of the officers differs slightly.  Detective Vincent testified that he provided Defendant with a warning citation, returned Defendant's documents to her, and asked her if she had any questions for him.  When she said she did not, Detective Vincent believed that she was free to leave.  At this point, Detective Vincent asked for consent to search the vehicle.  Defendant responded by nodding her head up and down and stating "Yeah, that's not a problem."

On the other hand, Detective Arnold's testimony is as follows. Detective Arnold testified that Detective Vincent returned to the vehicle, had Defendant step out of the vehicle, gave her a warning, returned her documents to her, and specifically told her that she was free to leave. It was after Detective Vincent told her that she was free to leave, that he asked for and was given consent to search the vehicle.

Upon searching the vehicle, Detective Vincent located a bottle of pills, which were later determined to be pseudoephedrine, in a purse located in the car. At this point, Detective Vincent took Defendant into custody. Upon completion of the search of the vehicle, Detective Vincent read Defendant her *Miranda* rights. Defendant waived her rights and agreed to talk to Detective Vincent. Defendant stated that she was looking to "flip" the pills (i.e., trade them for money).

Defendant seeks to suppress the evidence found during the search as well as the statements made thereafter.

## II.  DISCUSSION

At the evidentiary hearing, the government stipulated that standing was not an issue and that Defendant has standing to challenge the search. Defendant argues that the search was unlawful because Detective Vincent had no reasonable and articulable suspicion of criminal activity and that Defendant did not voluntarily consent to a search of her vehicle.

A.      SCOPE AND DURATION OF THE STOP

A traffic stop is a seizure for Fourth Amendment purposes, and must be justified by reasonable articulable suspicion under the standards set forth in *Terry v. Ohio*.[5] The Tenth Circuit has stated that a traffic stop is reasonable if (1) "'the officer's action was justified at its

---

[5]*United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998).

inception,'" and (2) the officer's action "'was reasonably related in scope to the circumstances which justified the interference in the first place.'"[6]

Here, Defendant has made no argument that the stop was not justified at its inception. Thus, the issue is whether the officer's actions exceeded the scope of the original stop.

"Generally, an investigative detention must 'last no longer than is necessary to effectuate the purpose of the stop.'"[7]  "As a general rule, once an officer's purpose in a traffic stop based on probable cause or reasonable suspicion is complete, the officer must let the person go."[8]  "Under ordinary circumstances, this limits the officer to request for the driver's license and registration, a computer check on the car and driver, an inquiry about the driver's travel plans, and the issuance of a citation."[9]

"Generally, '[i]f the driver produces a valid license and proof of right to operate the vehicle, the officer must allow him to continue on his way without delay for further questioning.'"[10]  "The officer, however, may extend this detention for reasons unrelated to the traffic stop under two circumstances: (1) if the officer has 'an objectively reasonable and

---

[6]*United States v. Bostero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995) (en banc) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

[7]*United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

[8]*United States v. Ozbirn*, 189 F.3d 1194, 1199 (10th Cir. 1999).

[9]*United States v. Cervine*, 347 F.3d 865, 871 (10th Cir. 2003).

[10]*Id*. (quoting *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993)).

articulable suspicion that illegal activity has occurred or is occurring"; or (2) "if the initial detention has become a consensual encounter."[11]

"A traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority."[12] "'Whether an encounter can be deemed consensual depends on whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter.'"[13] "An officer is not required to inform a suspect that she does not have to respond to his questioning or that she is free to leave."[14] In determining whether the encounter is consensual, the Court is to determine whether "there is evidence of 'a coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled.'"[15]

Here, the Court finds that after Detective Vincent returned Defendant's documents to her, the encounter became consensual. As noted above, the recollection of the officers involved in this stop differs slightly. Detective Vincent testified that he provided Defendant with a warning citation, returned Defendant's documents to her, and asked her if she had any questions for him.

---

[11] *Id.* (quoting *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994)).

[12] *United States v. Bradford*, 423 F.3d 1149, 1185 (10th Cir. 2005).

[13] *Id.* (quoting *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000)).

[14] *Id.*

[15] *United States v. Bustillos-Munoz*, 235 F.3d 505, 515 (10th Cir. 2000) (quoting *United States v. Turner*, 928 F.2d 956, 959 (10th Cir. 1991)).

When she said she did not, Detective Vincent believed that she was free to leave.  At this point, Detective Vincent asked for consent to search the vehicle.  Defendant responded by nodding her head up and down and stating "Yeah, that's not a problem."

Detective Arnold testified that Detective Vincent returned to the vehicle, had Defendant step out of the vehicle, gave her a warning, returned her documents to her, and specifically told her that she was free to leave.  It was after Detective Vincent told her that she was free to leave, that he asked for and was given consent to search the vehicle.

Under either scenario, the Court finds that the encounter was consensual.  Under Detective Vincent's recollection, he returned the documents and then asked if she had any further questions, to which she responded that she did not.  Although Detective Vincent did not inform her that she was free to leave, at this point, a reasonable person would believe that they were free to terminate the encounter.  Detective Vincent then asked for and received consent to search the vehicle.  It is a much easier case under Detective Arnold's scenario because Defendant was specifically told that she was free to go.  Only at that point, did Detective Vincent ask for consent to search the vehicle.  To the extent that these recollections are different, the Court finds Detective Vincent to be more credible because he is the officer who actually conducted the stop.

Further, while there were two officers present, the Court finds that there was not a coercive show of authority.  There is no evidence concerning the display of a weapon, physical touching by the officers, or use of a commanding tone of voice.  Based on the above, the Court finds that once Detective Vincent returned Defendant's documents to her, the stop became consensual.  As a result, the scope of the stop was not unlawfully extended.

B.      CONSENT TO SEARCH

Under the Fourth Amendment, a search conducted without a warrant is per se unreasonable, subject only to a few specifically established and well-delineated exceptions.[16] One of those well-delineated exceptions is a search conducted pursuant to consent.[17] "Before a district court may admit evidence resulting from a consent search, it must determine from the totality of the circumstances that (1) the defendant's consent was voluntary and (2) the search did not exceed the scope of the consent."[18] The issue here is whether Defendant's consent was voluntary.

"Valid consent is that which is freely and voluntarily given."[19] "Whether a defendant freely and voluntarily gave his consent to a search is a question of fact and is determined from the totality of the circumstances."[20] The government has the burden of showing that the consent was valid.[21] "First, it must present 'clear and positive testimony that consent was unequivocal and specific and freely and intelligently given.'"[22] "Second, the government must show that the

---

[16]*Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

[17]*Id*.

[18]*United States v. Gutierrez-Hermosillo*, 142 F.3d 1225, 1231 (10th Cir. 1998).

[19]*United States v. Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998) (internal quotation marks and citations omitted).

[20]*Id*.

[21]*Id*.

[22]*Id*. (quoting *United States v. Agulo-Fernandez*, 53 F.3d 1177, 1180 (10th Cir. 1995)).

police did not coerce the defendant into granting consent."[23]  Here, Defendant's arguments focus on the second issue—coercion.

In determining whether a consent to search was free from coercion the "court should consider, *inter alia*, physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant within the totality of the circumstances."[24]  "An officer's request for consent to search does not taint an otherwise consensual encounter 'as long as the police do not convey a message that compliance with their request is required.'"[25]

The Court finds that Defendant's consent was not given as a result of coercion.  There is no evidence that the officers involved drew their weapons, touched Defendant, or raised their voices during the encounter.  Indeed, Detective Vincent testified that he attempted to make light of the violation for which they were stopped.  Further, there is no evidence that the officers made any promises or inducements or engaged in trickery or deception.  There is simply nothing to indicate that Defendant was coerced into giving her consent.

The only factors pointed out by Defendant in support of her argument is that she was stopped at night in a somewhat secluded area and that the officers were wearing uniforms, badges, and guns, and that they drove police cars.  However, as noted above, there is no evidence that the officers drew their weapons.  Further, the officers testified that their lights and sirens had been turned off.  Further, if the Court were to take Defendant's argument to its logical limit, a

---

[23]*Id*.

[24]*United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir. 1994).

[25]*Id*. (quoting *United States v. Griffin*, 7 F.3d 1512, 1517 (10th Cir. 1993)).

uniformed officer making a stop in a patrol car would not be able to gain valid consent if he or she made a stop at night in a somewhat deserted area. The Court cannot accept such an argument. Thus, based on the totality of the circumstances, the Court finds that Defendant's consent was freely and intelligently given, and that it was not obtained by coercion.

### III.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Suppress (Docket No. 18) is DENIED. It is further

ORDERED that the time from the filing of the Motion to Suppress—September 13, 2007—through the new trial date to be established by the Court, is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J).

DATED   December 14, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge